UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOHN MALLOS PLAINTIFF

V. CIVIL ACTION NO. 3:25-CV-960-DPJ-ASH

OPTUM PUBLIC SECTOR
SOLUTIONS, INC., ET AL. DEFENDANTS

ORDER

This state-law tort and breach-of-contract case relates to an alleged sexual assault by a massage therapist. The matter is before the Court on two motions. First, Defendant Optum Public Sector Solutions, Inc. (Optum) moves to dismiss the Complaint. Def.'s Mot. [9]. Next, Plaintiff John Mallos seeks leave to amend his Complaint. Pl.'s Mot. [16]. Although the issues are close, the Court denies Optum's Motion to Dismiss [9] and grants Mallos's Motion to Amend [16].

I. Background

Captain John Mallos is a veteran who received medical treatment from facilities owned and operated by the Department of Veterans Affairs (VA). Compl. [1-1] ¶ 10. As a disabled veteran, part of his pain-management plan involved massage therapy, which he initially received at the VA facility in Jackson, Mississippi. *Id.* ¶¶ 11–12.

In November 2022, the VA informed Mallos that his massage therapy "would be referred out to the VA Community Care Network." *Id.* ¶ 13. The VA Community Care Network (CCN) is managed Optum as its third-party administrator. *Id.* Optum then contracted with Oasis Mobile Massage & Bodywork LLC (Oasis) to provide massage therapy to veterans. *Id.* ¶ 14. During his second appointment with Oasis, Mallos alleges that he was sexually assaulted by Oasis's owner and manager, Darrell Durell Walker, Jr. *Id.* ¶¶ 14–28.

On October 28, 2025, Mallos sued Optum, Oasis, and Walker in Hinds County Circuit Court. The Complaint asserts four counts: 1) negligence, gross negligence, and negligent infliction of emotional distress against Optum, 2) negligence, gross negligence, and negligent infliction of emotional distress against Oasis and Walker, 3) premises liability against Oasis, and 4) breach of contract against Optum. *Id.* ¶¶ 40–71.

On December 15, 2025, Optum removed the case to federal court citing the federal officer removal statute. Notice [1] at 1 (citing 28 U.S.C. § 1442(a)(2)). Mallos did not seek remand, and jurisdiction appears to exist. Optum then moved to dismiss on January 5, 2026. Def.'s Mot. [9]. Mallos responded in opposition, Pl.'s Resp. [14], and filed a separate motion to amend his Complaint, Pl.'s Mot. [16]. Both motions are now fully briefed. The Court will first consider Optum's motion to dismiss and then turn to Mallos's motion to amend.

II. Motion to Dismiss

A. Standards of Review

Optum seeks dismissal for both lack of jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). Def.'s Mot. [9].

1. Lack of Jurisdiction.

"Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

2. Failure to State a Claim

Optum also asserts that Mallos fails to state a claim under Rule 12(b)(6). When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations and footnote omitted). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

B. Analysis

Optum makes four arguments in its motion to dismiss. Two are jurisdictional. Optum argues that this Court lacks subject-matter jurisdiction under the Veterans' Judicial Review Act (VJRA) and the statute creating the Veterans' Community Care Program. Def's Mem. [10] at 8.

Next, it claims that Mallos lacks standing to bring a breach-of-contract claim because he is neither a party to Optum's contract nor an intended third-party beneficiary. *Id.* at 12. As non-jurisdictional arguments, Optum says that Mallos failed to sufficiently plead a breach-of-contract claim, *id.* at 13, and that Optum is immune from suit under the derivative-sovereign-immunity doctrine, *id.* at 4. The Court must first decide, "as a threshold matter," whether jurisdiction exists. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

1. VJRA/Community Care Program

Mallos contends that Optum was negligent, and grossly so, in the following ways related to the VA benefits he was receiving when the alleged assault happened:

> Optum failed to properly vet and credential Oasis and or Walker; failed to ensure Oasis and/or Walker's compliance with the requirements for Community Care Providers for the VA; failed to adequately and meaningfully train Oasis and/or Walker in the proper treatment of disabled veterans; failed to provide adequate security or other fail safes to reasonably protect Mallos and/or other disabled and vulnerable veterans; and failed to provide any oversight or supervision whatsoever or Oasis and/or Walker in the performance of their duties on its behalf as it pertains to Mallos.

Compl. [1-1] ¶ 44.[1] He also alleges that Optum "failed to act" when Mallos reported Walker's actions and that Optum has "allow[ed] Walker and related entities to remain within the Community Care Network." *Id.* ¶ 48. The initial question is whether these claims "fall within the exclusive jurisdiction of the VA" under the VJRA. Def.'s Reply [19] at 8; Def.'s Mem. [10] at 8.

Under the VJRA, the VA Secretary is charged with deciding "all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a). These

[1] Mallos lists the same allegations against Optum in his Proposed Amended Complaint. *See* Prop. Am. Compl. [16-1] ¶¶ 44, 48.

decisions "shall be final and conclusive and may not be reviewed by any other official or by any court." *Id.* A "benefit" is defined as "any payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3(e) (2026).

Optum frames Mallos's claim as a benefits issue. Def.'s Mem. [10] at 10. And it says the VJRA's "broad mandate" covers tort claims, like these, where "resolution would require the court to intrude upon the VA's exclusive jurisdiction." *Id.* at 8 (quoting *Andrews v. Sec'y, Dep't Veterans Affs.*, 845 F. App'x 880, 883–84 (11th Cir. 2021)). Thus, any decisions by the Secretary—delegated to Optum as a third-party administrator—that relate to benefits fall under the Secretary's exclusive jurisdiction. *Id.* That construction of § 511 isn't frivolous, but it fails to account for the VJRA's full scope and context.

Starting with the basics, a "district court lack[s] jurisdiction if [a plaintiff's] claims amount[] to an appeal of the VA's benefits decisions." *King v. U.S. Dep't of Veterans Affs.*, 728 F.3d 410, 414 (5th Cir. 2013) (finding no jurisdiction to "analyze whether the VA's agents knew or should have known that the denial of [plaintiff's] benefits was wrong"). Thus, in the typical case, plaintiffs are barred from "challeng[ing] earlier denials of a claim for benefits *as well as* related decisions on questions of fact and law." *Id.* (emphasis added) (quoting *Dambach v. United States*, 211 F. App'x 105, 108 (3d Cir. 2006)).

That bar exists even if the plaintiff alleges a tort claim that is merely a "quintessential benefits determination" in disguise. *Smart v. United States*, No. 25-50120, 2025 WL 3111593, at *2 (5th Cir. Nov. 6, 2025) (quoting *Smith v. United States*, 7 F.4th 963, 986 (11th Cir. 2011)) (finding no jurisdiction when tort claims "amount[ed] to an appeal of the denial of benefits repackaged as a medical negligence claim"); *see also Anestis v. United States*, 749 F.3d 520, 528

(6th Cir. 2014) (addressing whether veteran's claim was one "involving benefits masked in tort language").

Optum cites many nonbinding cases that reach these same conclusions—that district courts lack jurisdiction to consider claims challenging the denial of benefits no matter how the claims are framed. *See* Def.'s Mem. [10] at 9 (collecting cases). But that's not what Mallos asserts. The VA approved his benefits, and Mallos is not challenging that decision. He claims instead that Optum negligently provided them. *See* Compl. [1-1] ¶ 44. The parties cite no Fifth Circuit cases addressing this argument, and the Court found none. Nor have they even cited nonbinding cases in this precise context—a tort claim against a third-party administrator for negligently vetting and then monitoring the provision of approved benefits.

That said, other circuits have addressed similar issues, including the D.C. Circuit in *Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005). There, the plaintiff claimed "the VA failed to inform him that a VA doctor had diagnosed him with schizophrenia." *Id.* at 971. The district court dismissed the complaint under the VJRA, finding "that judicial review 'would require the Court to second-guess medical judgments made by DVA [Department of Veterans' Affairs].'" *Id.* at 973 (quoting district court opinion).

The D.C. Circuit reversed in part after construing § 511. "[W]e must determine whether adjudicating Thomas's claims would require the district court 'to determine first whether the VA acted properly in handling' Thomas's benefits request." *Id.* at 974 (quoting *Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000)). The Court found that some of Thomas's claims passed that test, while others didn't. For example, resolving the legal and factual issues related to his failure-to-inform claim was "not 'necessary' to the benefits determination." *Id.* (cleaned up). Thus, jurisdiction existed for those claims. *Id.* On the other hand, claims for failing to

render care "would require the district court 'to determine first whether the VA acted properly' in providing Thomas benefits, [so] these claims are barred by section 511." *Id.* at 975 (quoting *Price*, 228 F.3d at 422).

The Eleventh Circuit followed *Thomas* in *Milbauer v. United States*, a case Optum heavily cites. 636 F. App'x 556, 560–61 (11th Cir. 2016). There, the court affirmed dismissal for lack of jurisdiction because resolving the claim would require the court to first "determine whether Milbauer was entitled to a certain level of benefits, the performance of diagnostic procedures for his shoulder injury." *Id.* at 561. *Milbauer* therefore presents the more typical case when the dispute questions denied benefits.

The Eleventh Circuit then took a much deeper dive in *Smith v. United States*, when a veteran claimed that the VA failed to timely diagnose his cancer. 7 F.4th at 965. That court thoroughly reviewed § 511, starting with its text and history. *See id.* at 974–76. For starters, § 511(a) amended the previous 38 U.S.C. § 211(a). *Id.* at 974. Section 211(a) had stated: "[T]he decisions of the Administrator on any question of law or fact *under any law administered by* the Veterans' Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive." *Id.* (emphasis added) (citing 38 U.S.C. § 211(a)).

The Supreme Court construed § 211(a) in *Traynor v. Turnage*, finding it did not preclude the court from deciding whether the Secretary's benefits decision violated the Rehabilitation Act of 1972. *See id.* at 974–75 (citing 485 U.S. 535, 543–45 (1988)). Congress responded to *Traynor* and passed § 511(a), which now says, "The Secretary shall decide all questions of law and fact *necessary to a decision* by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." *Id.* at 975 (quoting 38 U.S.C. § 511(a)).

Adding the term "necessary to a decision" thus gave the Secretary exclusive jurisdiction to decide collateral challenges like the one at issue in *Traynor*—i.e., whether the benefits decision violated other laws. *See id.* at 974–75 (examining legislative history); *see also Hall v. U.S. Dep't of Veterans' Affs.*, 85 F.3d 532, 535 (11th Cir. 1996) (holding that no jurisdiction existed to challenge constitutionality of VA regulations related to benefits decision because it raised "questions of law and fact necessary to a decision by the Secretary under a law affecting veterans' benefits").

After considering the existing text and various judicial constructions of it—including the D.C. Circuit's test from *Thomas*—the Eleventh Circuit found that

> Section 511(a)'s limitation on judicial review includes two key phrases. The first key phrase is "a decision by the Secretary under a law that affects the provision of benefits . . . to veterans." *Id.* Numerous federal statutes and hundreds of federal regulations govern a veteran's eligibility for benefits, entitlement to benefits, and the scope of those benefits, and thereby "affect[] the provision of benefits . . . to veterans." Therefore, any and all determinations by the Secretary *as to eligibility, entitlement, or the scope of benefits* (including health care benefits) is "a decision by the Secretary under a law that affects the provision of benefits."

*Smith*, 7 F.4th at 985 (emphasis added).

With that construction, the court divided plaintiff's claims into two categories, those alleging negligence as to "approval, authorization, and scheduling" and those alleging "medical negligence or malpractice." *Id.* at 985–86. It found no jurisdiction for the first category. *Id.* at 986 (citing *Tunac v. United States*, 897 F.3d 1197, 1205–06 (9th Cir. 2018)). The medical negligence claims, however, did "not require the district court to decide whether [plaintiff] was 'entitled to benefits,' nor d[id] they 'require the court to revisit any decision made by the Secretary in the course of making benefits determinations.'" *Id.* at 987 (quotation marks omitted) (quoting *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025 (9th Cir. 2012) (en banc)). Those claims survived.

*Thomas* and *Smith* are not outliers—other circuits have also applied the D.C. Circuit's test or versions of it. *See, e.g.*, *Jones v. United States*, 727 F.3d 844, 848 (8th Cir. 2013) (applying *Thomas* test); *Anestis*, 749 F.3d at 527 ("Anestis's claim is most properly characterized as a non-benefits tort claim that would not require the district court to review any VA benefits decisions"); *Roberson v. United States*, No. 23-2583, 2024 WL 2104498, at *3 (3d Cir. May 10, 2024) (finding jurisdiction to hear "claim of negligence or malpractice" which is "separate from Roberson's claim about the VA's failure to pay for or provide hearing aids").

As noted, these cases are not a perfect fit because they do not address a third-party administrator's alleged negligence in safely providing the approved benefits. But the type of tort alleged seems less relevant than the way courts have construed the VJRA and the benefits decisions that fall exclusively to the Secretary. As stated, most courts use some variation of the *Thomas* test—asking whether the court must determine whether the plaintiff "was entitled to a certain level of benefits." 394 F.3d at 974.

That analysis also meshes with the rest of the VJRA. It is "fundamental that a section of a statute should not be read in isolation from the context of the whole Act." *Richards v. United States*, 369 U.S. 1, 11 (1962). So, when § 511 speaks of the Secretary's "decisions," the Court looks at how other VJRA sections treat such decisions. *Smith*, 7 F.4th at 975. And again, those statutory provisions specifically address benefits decisions. *See, e.g.*, *King*, 728 F.3d at 414 (noting that "other provisions in the VJRA establish 'an exclusive review procedure' for veterans to appeal *benefits decisions*" (emphasis added)); *see also Smith*, 7 F.4th at 975 n.8 (noting that VJRA allows appeals of adverse benefits decisions); *Thomas*, 394 F.3d at 973–74 ("Other

provisions of the Act demarcate the path to appellate review of secretarial benefits decisions . . . .” (citing 38 U.S.C. §§ 7104(a), 7252(a), 7292(c)).[2]

The Court agrees with *Thomas* and *Smith* and finds them equally applicable in this context. Mallos is not asking the Court to determine whether he “was entitled to a certain level of benefits.” *Thomas*, 394 F.3d at 974. The benefits were already approved. And jurisdiction is not withheld simply because a claim involves a “service.” *Anestis*, 749 F.3d at 528. Even when a claim requires the court to consider VA policy, this does not trigger § 511 unless the adjudication turns on entitlement to benefits. *See id.* at 527 (finding that § 511 did not apply even though claims required analysis of VA policy for provision of medical care). Thus, section 511(a) does not preclude jurisdiction.

2. Community Care Program

Optum offers a similar argument contending that “Congress expressly prohibited judicial review of all decisions under the Veterans Community Care Program.” Def.’s Mem. [10] at 8 (quoting *Beaudette v. McDonough*, 93 F.4th 1361, 1367 (Fed. Cir. 2024)).

The statute creating the Veterans’ Community Care Program provides that “review of any decision under subsection (d) or (e) shall be subject to the Department’s clinical appeals process, and such decisions may not be appealed to the Board of Veterans’ Appeals.” 38 U.S.C. § 1703(f). Thus, whether § 1703 applies depends on whether Mallos’s claims would require review of any decision under subsection (d) or (e).

Subsection (d) concerns “[c]onditions under which care is *required to be furnished* through non-Department providers.” *Id.* § 1703(d) (emphasis added). It details when the

[2] As discussed in the next section, the Community Care Program is also consistent with these holdings.

Secretary "shall . . . furnish" medical services outside the VA to veterans and the criteria to consider when developing rules to implement these services. *See id.* Subsection (e) provides the "[c]onditions *under which care is authorized* to be furnished through non-Department providers." *Id.* § 1703(e) (emphasis added). It resembles subsection (d) but explains when the Secretary "may furnish" such care, rather than when it is required. *See id.*[3]

Few federal courts have considered the permissible scope of judicial review under § 1703(f). Indeed, most claims arise in the Court of Appeals for Veterans Claims. *See, e.g.*, *Chesterfield v. Collins*, No. 24-4684, 2025 WL 957881, at *1 (Vet. App. Mar. 31, 2025); *Windsor v. Collins*, No. 25-2566, 2025 WL 1097801, at *2 (Vet. App. Apr. 14, 2025). In these cases, the plaintiffs sought review of decisions that fell squarely under § 1703(f). *See Windsor*, 2025 WL 1097801, at *1 (finding plaintiff's requests for VA to implement "dental care eligibility" and "refer [him] . . . to a community-based oral surgeon" were barred by § 1703(f)); *Chesterfield*, 2025 WL 957881, at *1 (finding "request for community care . . . [and allegations of] unreasonable delay" barred under § 1703(f)).

Mallos's claims are distinct. He does not say certain benefits were required or authorized under §§ 1703(d) or (e). *See* Compl. [1-1] ¶ 44. Nor does he dispute where this care was provided, the amount he paid, or the timeline for his approval. *See* 38 U.S.C. § 1703(d)–(e) (explaining *when* services through the CCN are necessary and allowable). Accordingly, the

---

[3] Though the headings for these sections are broadly phrased, they do not preclude judicial review. "While section headings are not controlling, they can be used as evidence when interpreting the operative text of the statute." *United States v. Lauderdale Cnty.*, 914 F.3d 960, 965–66 (5th Cir. 2019) (citing *Yates v. United States*, 574 U.S. 528, 540 (2015)); *see also Yates*, 574 U.S. at 550–51 (Alito, J., concurring in the judgment). But here, there is no ambiguity to construe in the text. *See Almendarez–Torres v. United States*, 523 U.S. 224, 234 (1998) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute" (quotation marks omitted)).

Court finds that § 1703(f) does not preclude review of Mallos's negligence claims. The Court denies Optum's motion as to this argument.[4]

3. Standing

Mallos was not a party to Optum's contract with the VA. The question is whether he was an intended third-party beneficiary (and thus had standing to sue for its breach) or was an incidental beneficiary with no such standing.

***The rebuttable presumption.*** Several circuits have adopted the presumption that the parties who benefit from government contracts are incidental beneficiaries "absent a clear intent to the contrary." *Klamath Water Users Prot. Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999); *see also Interface Kanner, LLC. v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 933 (11th Cir. 2013) (applying presumption).[5]

The Fifth Circuit seemingly adopted the incidental-beneficiary presumption in *Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, National Association*, 758 F.3d 592, 597 (5th Cir. 2014). *Excel Willowbrook* was one of many "cases concerning an obscure but heavily litigated

---

[4] Optum failed to defend this argument in its Reply, leaving Mallos's arguments unrebutted. *See* Def.'s Reply [19].

[5] There is an underdeveloped threshold choice-of-law question. Government contracts are governed by federal common law. *See Clem Perrin Marine Towing, Inc. v. Pan. Canal Co.*, 730 F.2d 186, 189 (5th Cir. 1984) (citing *United States v. Seckinger*, 397 U.S. 203 (1970)). And the presumption addressed in this section arises from that federal law. But whether a non-party to a contract has standing to bring a breach-of-contract claim is a matter of state law when "the litigation is among private parties and no substantial rights or duties of the United States hinge on its outcome." *Miree v. DeKalb Cnty.*, 433 U.S. 25, 31 (1977); *see also Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (explaining when "uniquely federal interests" would require application of federal common law to third-party-beneficiary question). The Court finds no Mississippi cases creating an incidental-beneficiary presumption for government contracts, so if Mississippi law applies, then Mallos prevails on this point. *See Simmons Hous., Inc. v. Shelton ex rel. Shelton*, 36 So. 3d 1283, 1286 (Miss. 2010) (listing factors for intended beneficiary status). But even applying the federal presumption as Optum urges, the Court reaches the same conclusion.

consequence of the largest bank failure in U.S. history: the fate of Washington Mutual's (WaMu) leases for real estate on which bank branches were as yet unbuilt at the time of the company's collapse." *Cent. Sw. Tex. Dev., L.L.C. v. JPMorgan Chase Bank, Nat'l Ass'n*, 780 F.3d 296, 297 (5th Cir. 2015). When the Federal Deposit Insurance Company (FDIC) became the receiver, it contracted with Chase to acquire WaMu's assets and liabilities through a purchase and assumption agreement (P&A Agreement). *Excel Willowbrook*, 758 F.3d at 595. Chase believed the P&A Agreement gave it the option to accept or reject assignment of WaMu's real-estate leases, and Chase rejected them. *Id.* at 596. When it did, the landlords sued Chase for breach of contract. *Id.*

Chase sought summary judgment arguing that the landlords were incidental beneficiaries with no standing to sue for breach of contract. *Id.* The district court agreed, *id.*, and the Fifth Circuit did too.

> The threshold issue on appeal is whether the Landlords qualify as intended beneficiaries to the P&A Agreement, in which case they have a contractual right to enforce Chase's promise to assume WaMu's obligations under the Leases. As the FDIC observes, the Eleventh Circuit and the Ninth Circuit have both recently addressed this question, declining to afford similarly situated landlords third-party beneficiary status under the same P & A Agreement at issue in this case. Our sister circuits reasoned that there is a presumption against third-party beneficiary status under government contracts—a presumption that, while it does not require the party seeking enforcement to be "specifically or individually identified in the contract" to be overcome, does require proof that it "fall[s] within a class clearly intended to benefit" from the assignment. As the FDIC's assignment to Chase included a no-beneficiaries clause, the courts reasoned, the landlords could not possibly overcome this presumption.

*Id.* at 596–97 (footnotes omitted) (quoting *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat'l Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012); *Interface Kanner*, 704 F.3d at 933).

The Fifth Circuit wasn't "so sure" this was the correct result, even though the P&A Agreement included a "no-beneficiaries clause." *Id.* at 597. But it nevertheless found the landlord was an incidental beneficiary. *Id.* at 598–99.

> Were we writing on a blank slate, we would conclude that the Landlords are creditor beneficiaries to the P&A Agreement and therefore have a contractual right to enforce Chase's promise to assume the Leases. However, we cannot ignore that two of our sister circuits have reached a contrary conclusion on virtually identical facts. In the interest of maintaining uniformity in the construction and enforcement of federal contracts—an area where uniformity is critical—we reluctantly hold that on the narrow facts of this case, the Landlords do not qualify as third-party beneficiaries.

*Id.*; *see also Cent. Sw. Tex. Dev.*, 780 F.3d at 299–300 (examining same Chase P&A Agreement as in *Excel Willowbrook* and noting, "we followed our sister circuits and held that the presumption against third-party beneficiary status under government contracts decided the question in Chase's favor").

*Excel Willowbrook* therefore appears to have adopted the presumption of incidental-beneficiary status for government contracts. But the test it adopted is unclear. As noted, the Court stated that it was following "our sister circuits" in adopting a presumption. *Excel Willowbrook*, 758 F.3d at 598. It then described the test: "[W]hile [the presumption] does not require the party seeking enforcement to be 'specifically or individually identified in the contract' to be overcome, [it] does require proof that it 'fall[s] within a class clearly intended to benefit' from the [contract]." *Id.* at 597 (quotations omitted).

*Excel Willowbrook* cited two cases for that quote. *Id.* (quoting *GECCMC*, 671 F.3d at 1033; and *Interface Kanner*, 704 F.3d at 933). But the test the Fifth Circuit quoted and presumably applied is not the test as articulated by the courts the Fifth Circuit said it was following. For example, the Ninth Circuit observed:

> To prove intended beneficiary status, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party. We examine the terms of the contract as a whole, giving them their ordinary meaning. The contract need not name a beneficiary specifically or individually in the contract; instead, it can specify a class clearly intended by the parties to benefit from the contract. Nevertheless, demonstrating third-party beneficiary status in the context of a government contract *is a comparatively difficult task.* Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, rather than intended beneficiaries, and so may not enforce the contract absent a clear intent to the contrary.

*GECCMC*, 671 F.3d at 1033 (emphasis added) (cleaned up). Thus, to have the right to sue, the contract must clearly demonstrate that intent. *Id.*

In *Interface Kanner*, the other case *Excel Willowbrook* cites for the quoted presumption test, the Eleventh Circuit offers a similar but arguably less clear articulation. *See* 704 F.3d at 932–33. First, like the Ninth Circuit, the court said that to overcome the incidental-beneficiary presumption in a government contract, a plaintiff "must show that the parties 'clear[ly] inten[ded]' that Interface *be permitted to sue* to enforce the P & A Agreement." *Id.* at 933 (emphasis added) (quoting *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993)). Yet the next sentence says, "Although Interface 'need not be specifically or individually identified in the contract, [it] must fall within a class clearly intended to be benefited thereby.'" *Id.* (quoting *Mont. v. United States*, 124 F.3d 1269, 1273 (Fed. Cir. 1997) (rejecting argument that to rebut presumption "contract must give the third-party the direct right to compensation or to enforce that right against the promisor")).

So, there are a few potential choices, none of which are appealing. *Excel Willowbrook* can be read as adopting the Ninth and Eleventh Circuit opinions—both mentioning the need to show a clear intent to allow the third-party to sue—even though *Excel Willowbrook* didn't mention that part of the test. *See* 758 F.3d at 598. Or *Excel Willowbrook*, while purporting to follow those two opinions, actually adopted only the second part of the test from *Interface*

*Kanner*—i.e., requiring only "proof that [plaintiff] 'fall[s] within a class clearly intended to benefit' from the assignment." *Id.* at 597 (quoting *GECCMC*, 671 F.3d at 1033; *Interface Kanner*, 704 F.3d at 933).

And there's a third option. The Fifth Circuit begrudgingly followed the Ninth and Eleventh Circuits "[i]n the interest of maintaining uniformity in the construction and enforcement of federal contracts" given that those courts had construed the same Chase P&A Agreement under "virtually identical facts." *Id.* at 598. Indeed, the court noted, "[W]e reluctantly hold that *on the narrow facts of this case*, the Landlords do not qualify as third-party beneficiaries." *Id.* at 599 (emphasis added). No Fifth Circuit case has mentioned this presumption outside the Chase P&A Agreement, and it is not clear that it should apply to contracts that clearly anticipate provision of benefits to a specifically named subset of the general population. Nor has Optum presented authority that veterans are presumed to be incidental beneficiaries under contracts like this.[6]

This is a close call. The Court fully acknowledges nonbinding precedent applying this presumption, though in distinguishable contexts. *See, e.g.*, *Burton v. Ocwen Loan Servicing, LLC*, No. 3:14-CV-118-MPM-SAA, 2015 WL 5295202 (N.D. Miss. Sept. 19, 2015). But that authority is too thin to adopt a presumption other than the one the Fifth Circuit expressly articulated. *Excel Willowbrook* is binding, so the Court applies the test it stated. Mallos need not

---

[6] The Ninth Circuit test originates from Restatement (Second) of Contracts § 313 (1981). *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999). That court has noted, "Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *Id.* (quoting Restatement (Second) of Contracts § 313 cmt. a). The examples in the restatement relate to services to the general public, like delivering the mail or water. *See* Restatement (Second) of Contracts § 313 cmt. a. But the Restatement notes decisions expanding this rule beyond services to the general public. *See id.* Rep.'s Note cmt. a.

show that he was mentioned in the contract, but he must show that he "falls within a class clearly intended to benefit from the [contract]." *Excel Willowbrook*, F.3d at 597 (cleaned up).

***Evidence rebutting the presumption.*** Optum casts the VA, rather than the veteran population or individual veterans, as the Contract's primary beneficiary because Optum performed the VA's duties to the veterans. *See* Def.'s Reply [19] at 13 (noting the VA's "statutory obligation to provide the services provided by the CCN").

To begin, Optum's cited case law is distinguishable. For example, in *Hume v. Evanston Insurance Co*., the court found plaintiffs were only incidental beneficiaries because the contract did "not contain terms, conditions or other language evidencing *any* legal obligation or duty on the part of [Defendant] to Plaintiffs." No. 1:08-CV-189-HSO-JM, 2008 WL 5233415, at *3 (S.D. Miss. Dec. 10, 2008) (emphasis added); Def.'s Reply [19] at 15. Likewise, in *Woodring v. Robinson*, the court found plaintiff was not an intended third-party beneficiary because she "pointed to no language" evincing that defendants assumed any obligation to her in the contracts at issue. 892 F. Supp. 2d 769, 774 (S.D. Miss. 2012); Def.'s Reply [19] at 15.

Here, the VA is statutorily obligated to provide the disputed services to veterans. *See* 38 U.S.C. § 1703(a) (establishing program to furnish care for "veterans"). And by its own admission, Optum entered into its contract with the VA to administer these services. Def.'s Reply [19] at 13–14. Consistent with that, the contract provides that the "VA is committed to providing Veterans with timely, accessible, and high-quality care. VA intends to honor this commitment by improving performance, promoting a positive culture of service, increasing operational effectiveness and accountability, advancing healthcare innovation through research, and training future VA clinicians." Contract [14-1] at 51.

Those goals illustrate Optum's duties, which included "establish[ing] and maintain[ing] a network of high performing licensed healthcare providers as well as healthcare practitioners to deliver patient-centered care." *Id.* Optum was also required to "(i) provide exemplary customer service; (ii) *monitor and manage quality outcomes*; (iii) use data and performance metrics to improve services, and (iv) process and pay claims *in order to enhance Veterans' healthcare experiences*." *Id.* (emphasis added). Mallos alleges that these provisions were placed into the contract for his direct benefit, *see* Pl.'s Mem. [15] at 18, and that Optum breached those obligations, *see* Compl. [1-1] ¶¶ 67–70; Prop. Am. Compl. [16-1] ¶¶ 67–77.

Given the VA's duties to Mallos, and Optum's agreement to furnish those benefits and "monitor and manage quality outcomes," the Court finds that Mallos "fall[s] within a class clearly intended to benefit from" Optum's contract with the VA. *Excel Willowbrook*, 758 F.3d at 597 (cleaned up); *see also* Restatement (Second) of Contracts § 302 (1981). Thus, under federal law, Mallos has rebutted the presumption of incidental-beneficiary status. The Court denies Optum's motion as to this ground. And as such, it finds that jurisdiction exists in this Court. Optum's remaining arguments fall under Rule 12(b)(6).

4. Failure to State a Breach-of-Contract Claim

Optum also argues that Mallos "failed to sufficiently plead a breach of contract claim." Def.'s Mem. [10] at 13. In Mississippi, "a plaintiff asserting any breach-of-contract claim has the burden to prove, 'by a preponderance of the evidence: 1. the existence of a valid and binding contract; and 2. that the defendant has broken, or breached it; and 3. that he has been thereby *damaged monetarily*.'" *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224–25 (Miss. 2012) (quoting *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992)). Those requirements are heightened for third-party beneficiaries like Mallos, who must show that the right they seek to

enforce "spring[s] from the terms of the contract" and that "the alleged broken condition was placed in the contract for their direct benefit." *Rein v. Benchmark Const. Co.*, 865 So. 2d 1134, 1145–46 (Miss. 2004) (citations omitted).

Optum argues that there is no valid contract between it and Mallos and that Mallos has otherwise failed to "sufficiently plead a breach of contract claim as a third-party beneficiary." Def.'s Mem. [10] at 13. But, as stated, the Court finds that Mallos has done so. The Court denies Optum's motion as to this ground.

5. Derivative Sovereign Immunity

Finally, Optum says it is entitled to dismissal of all claims under the derivative sovereign-immunity doctrine. *Id.* at 4.

This form of immunity, "suggested by the Supreme Court in *Yearsley v. W.A. Ross [Construction] Co*., 309 U.S. 18 (1940), is not based on sovereign immunity and does not deprive a federal court of subject matter jurisdiction." *Johnson v. Affiliated Comput. Servs., Inc*., 833 F. App'x 411, 412 (5th Cir. 2021) (citing *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016). So, the Court considers this argument under Rule 12(b)(6).

Also, "*Yearsley* immunity is an affirmative defense." *Taylor Energy Co., L.L.C. v. Luttrell*, 3 F.4th 172, 175 (5th Cir. 2021). "Rule 12(b)(6) dismissal may . . . 'be appropriately based on a successful affirmative defense' provided that the affirmative defense 'appear[s] on the face of the complaint.'" *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (quoting *Basic Cap. Mgmt. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020)).

Substantively, derivative sovereign immunity, or *Yearsley* immunity, protects federal contractors who show that their "actions were (1) authorized and directed by the U.S. Government and (2) validly conferred by Congress." *Webb v. 3M Co*., 627 F. Supp. 3d 612, 622 (S.D. Miss. 2022) (citing *Taylor Energy*, 3 F.4th at 175).

"For actions to be authorized and directed by the Government, the contractor's actions should comply with federal directives." *Taylor Energy*, 3 F.4th at 175–76 (citing *Campbell-Ewald Co*., 577 U.S. at 167 n.7). That said, though "the contractor must adhere to the government's instructions to enjoy derivative sovereign immunity[,] staying within the thematic umbrella of the work that the government authorized is not enough to render the contractor's activities the act[s] of the government." *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014) (quotation marks omitted), *cited in Taylor Energy*, 3 F.4th at 176. Instead, "[t]he appropriate inquiry is whether [the contractor] adhered to the Government's instructions as described in the contract documents." *Taylor Energy*, 3 F.4th at 176.

"The second prong of *Yearsley* immunity requires a contractor's authority to be validly conferred by Congress." *Id.* at 177; *see id.* (quoting *Yearsley*, 309 U.S. at 20–21 ("[A]uthority to carry out the project was validly conferred . . . if what was done was within the constitutional power of Congress.")). Importantly, the question is not whether Optum's actions "violated the law, but rather whether Congress had the authority to assign [Optum] to complete that task." *Cunningham v. Gen. Dynamics Info. Tech., Inc*., 888 F.3d 640, 648 (4th Cir. 2018). Optum must prove both prongs to receive immunity. *Taylor Energy*, 3 F.4th at 175.

As Optum acknowledges, it must show that its affirmative defense is apparent from the face of the pleadings. Def.'s Reply [19] at 2 (citing *Ackerson*, 589 F.3d at 207). In *Ackerson*, the court affirmed dismissal noting that the plaintiffs did not "allege that the Contractor Defendants

exceeded their authority or in any way deviated from Congress's direction or expectations." 589 F.3d at 207. Accepting Mallos's pleaded facts as true, his Complaint does allege that Optum deviated from the Government's direction and expectations.

Mallos alleges that Optum "owed a duty of care to Mallos to protect him against the unreasonable risk of injury." Compl. [1-1] ¶ 43. He claims that through its various failures, Optum breached this duty owed to him. *Id.* ¶¶ 44–48. He also alleges that under the Contract, Optum was responsible for "identifying, contracting, negotiating, credentialing, educating, and supervising providers who deliver services to Veterans." *Id.* ¶ 67. And Optum was to "ensure quality outcomes for Veterans and positive Veterans experiences," *id.*, "its providers had appropriate compliance programs in place," *id.* ¶ 68, and "its [CCN] providers maintained appropriate liability insurance," *id*. Mallos alleges that Optum breached these obligations. *Id.* ¶ 69.

Though Mallos didn't cite the contract provisions in his Complaint, under Rule 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). And the contract tracks Mallos's allegations, requiring Optum to "(i) provide exemplary customer service; (ii) monitor and manage quality outcomes; (iii) use data and performance metrics to improve services, and (iv) process and pay claims in order to enhance Veterans' healthcare experiences." Contract [14-1] at 51. Optum also agreed to "[m]onitor quality and cost-effective care," *id*. at 61, and require "all health-care providers performing under this contract to maintain . . . professional liability insurance," *id.* at 228. Though not an exhaustive list of Optum's obligations, this language shows that, taking the facts alleged in Mallos's Complaint as true, the *Yearsley* affirmative defense is not apparent from the face of the Complaint. At a minimum, it is not apparent whether Optum adhered to "direction or

expectations" as to the duty to monitor and manage quality outcomes. *Ackerson*, 589 F.3d at 207.

Though the Court finds that the *Yearsley* affirmative defense fails under Rule 12(b)(6), that doesn't mean Optum won't ultimately prevail as to some or all claims. Optum may reurge its defense under Rule 56 after appropriate discovery, at which point the parties should offer claim-by-claim analysis under the doctrine.[7]

## III. Motion to Amend

After Optum filed its Motion to Dismiss [9], Mallos moved to amend his Complaint. *See* Pl.'s Mot. [16]; Prop. Am. Compl. [16-1]. Optum opposes amendment. *See* Def.'s Resp. [18]. As explained, the Court grants Mallos's motion.

### A. Standard of Review

Rule 15(a)(2) governs motions to amend and states that "[t]he court should freely give leave [to amend] when justice so requires." That said, a district court may deny a motion to amend where amendment would be futile. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). Amendment would be futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Id.* at 873. So, the Court applie[d] "the same standard of legal sufficiency as applie[d] under Rule 12(b)(6)" to the motion to amend. *Id.* (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

The decision "[w]hether leave to amend should be granted is entrusted to the sound discretion of the district court." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993). A party seeking leave to amend "must give the court at least some notice of what his or her

---

[7] The Court notes Mallos's negligence-exception argument, also based on *Ackerson*. *See* Pl.'s Mem. [15] at 2–6. The Court questions whether that analysis is dicta, but the parties may revisit the argument if Optum reasserts this defense.

amendments would be and how those amendments would cure the initial complaint's defects." *D.L. Markham DDS v. Variable Annuity Life Ins. Co*., 88 F.4th 602, 613–14 (5th Cir. 2023) (citing *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021)). And under Uniform Local Rule 15, the movant must attach a proposed amended complaint to the motion.

B. Analysis

Optum says that amendment "is futile for the same reasons the original [Complaint] is legally defective." Def.'s Resp. [18] at 2. Because the Court declined to dismiss the initial Complaint, this argument is unpersuasive.

Next, Optum says the contract language Mallos cites either "mischaracterize[s] or contradict[s] the plain language of the contract." *Id.* at 6 (quoting *Sterling v. City of Jackson*, 159 F.4th 361, 379 (5th Cir. 2025) ("If a complaint is premised on a document attached to the complaint, and the attachment contradicts an allegation in the complaint, the exhibit controls.")). But here, Optum makes this argument to support a position the Court has already rejected—that Mallos is not an intended third-party beneficiary. *Id.* at 7 (stating that "Mallos did not allege sufficient facts in his Original Complaint to establish himself as a third-party beneficiary under the Contract"). These purported mischaracterizations do not disturb the Court's conclusion that Mallos has standing as a third-party beneficiary and has stated a breach-of-contract claim. *See supra* at 12–17.

Third, Optum argues in reply that Mallos "fails to allege facts sufficient to state a claim for an independent tort committed by Optum." Def.'s Resp. [18] at 7. According to Optum, it is insufficient to allege that it negligently performed its duties under the contract, but rather, Mallos must allege an independent tort. Def.'s Resp. [18] at 7. Indeed, "breach of a contract (whether

described as 'negligent' or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 993 n.2 (Miss. 2021), *quoted in Murphy v. Allstate Vehicle & Prop. Ins. Co.*, No. 3:21-CV-825-DPJ-FKB, 2022 WL 2541281, at *6 n.2 (S.D. Miss. July 7, 2022).

"[A] duty of care 'may sometimes have relation to obligations growing out of, or coincident with, a contract, and frequently the same facts will sustain either class of action.'" *Clausell v. Bourque*, 158 So. 3d 384, 391 (Miss. Ct. App. 2015) (quoting *Hazell Mach. Co. v. Shahan*, 161 So. 2d 618, 624 (Miss. 1964)). The Mississippi Supreme Court has recognized that "[a]ccompanying every contract is a common law duty to perform with care, skill and reasonable experience, and a negligent failure to observe any of these conditions is a tort as well as a breach of contract." *Gilmore Co. v. Garrett*, 582 So. 2d 387, 391 (Miss. 1991) (citation omitted).[8]

Mallos says "Optum owed a duty of care to . . . protect him against the unreasonable risk of injury." Prop. Am. Compl. [16-1] ¶ 43; *see also* Pl.'s Reply [22] at 5 (noting that irrespective of the contract, Optum was required to "act as a reasonable, prudent person would act under the circumstances"). He alleges that "[b]y performing negligently" Optum breached its contractual duty. Prop. Am. Compl. [16-1] ¶ 44. At this stage, Mallos must provide only factual allegations that "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). The Court finds that Mallos meets this test.

---

[8] "It is well established under Mississippi law that a negligence claim may be founded on the breach of a legal duty arising from a contract between the parties." *Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 649 (S.D. Miss. 2013) (collecting cases).

In sum, Optum fails to show that amendment would be futile. Thus, the Court grants Mallos's Motion to Amend [16].

IV. Conclusion

The Court has considered all arguments presented. Any argument not specifically addressed would not have affected the outcome. For the reasons stated above, the Court denies Optum's Motion to Dismiss [9] and grants Plaintiff's Motion to Amend [16]. Mallos is instructed to file his Proposed Amended Complaint within seven days of this Order.

**SO ORDERED AND ADJUDGED** this the 4th day of September, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE